## United States District Court
## District of Minnesota

| | |
|---|---|
| Susan Finnell, | Court file no. _____ |
| Plaintiff, | |
| v. | **Complaint** |
| The Brachfeld Law Group, P.C., Robert Doe, and Does 2-10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### Jurisdiction

1.  This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") and out of the invasions of Plaintiff's personal privacy by these Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3.  Venue is proper because the acts and transactions occurred in Minnesota, Plaintiff resides in Minnesota, and Defendants transact business in Minnesota.

## Parties

4.   Plaintiff Susan Finnell is a natural person who resides in Robbinsdale, County of Hennepin, State of Minnesota, and is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5.   Defendant The Brachfeld Law Group, P.C. ("Brachfeld") is an California corporation and collection agency, with a principal address of 880 Apollo Street, Suite 155, El Segundo, CA 90245, Defendant Brachfeld's registered agent in California is Corporation Service Company d/b/a CSC – Lawyers Incorporating Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833, and Defendant Brachfeld's registered agent in Minnesota is Corporation Service Company, 33 South Sixth Street, Multifoods Tower, Minneapolis, MN 55402. Defendant Brachfeld is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

6.   Defendant Robert Doe is a natural person and is employed at all relevant times by Defendant Brachfeld as a collection agent and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

7.   Defendants Does 2-10 are natural persons who were employed at all relevant times by Defendant Brachfeld as collection agents and are each a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## Factual Allegations

8.   On or before 2010, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely a personal debt with Citibank, which was used by Finnell for personal, family, and household purchases.

9.   Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendants for collection from Finnell.

10.   As part of their illegal collection efforts, Defendants contacted Finnell, her mother, Joyce Finnell, and her sister, Patty Mendoza, in their efforts to collect the debt.

### Brachfeld Begins Calling Finnell at Home

11.   In or about April or May 2011, Brachfeld began contacting Finnell at her home phone number.

12.   During April and May 2011, Brachfeld left around thirty messages for Finnell on her home phone number voicemail.

13.   Finnell's home phone number's voicemail had the following outgoing greeting "This is Susan, leave me a message. Have a blessed day."

*Defendant Robert Doe Contacts Finnell's Sister on June 8, 2011*

14.    On or about June 8, 2011, Defendant Robert Doe, a debt collector working

for Defendant Brachfeld, contacted Finnell's mother, Joyce Finnell, and

sister, Patty Mendoza, by telephone in an effort to collect the debt, which

was a "communication" in an attempt to collect a debt as that term is

defined by 15 U.S.C. § 1692a(2).

15.    Finnell's mother, Joyce Finnell, answered the phone and briefly spoke with

Defendant Robert Doe.

16.    Soon thereafter, Finnell's sister, Patty Mendoza, took the phone and spoke

with Defendant Robert Doe.

17.    Upon taking the phone, Defendant Robert Doe told Patty Mendoza that he

was Robert from the Brachfeld Law Group and he was looking for Susan,

or words to that effect.

18.    By identifying the call as coming from the Brachfeld Law Group,

Defendant Robert Doe was engaged in the unauthorized practice of law.

19.    Defendant Robert Doe told Patty Mendoza that if he didn't hear from

Susan, they were going to sue her and it would effect her job, or words to

that effect.

20.    Defendant Robert Doe asked Patty Mendoza for Finnell's phone number.

21.     Patty Mendoza provided Finnell's mobile phone number.

22.     Defendant Robert Doe told Patty Mendoza "Can you have her get ahold of us?" or words to that effect.

23.     Defendant Robert Doe again stated he was Robert from the Brachfeld Law Group and provided a phone number of (866) 837-6262.

24.     Thereafter, the call ended.

25.     Upon information and belief, Defendant Robert Doe is not licensed to practice law in the state of Minnesota.

26.     Upon information and belief, no member of Defendant Brachfeld is licensed to practice law in the state of Minnesota.

27.     This call to Patty Mendoza was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(5), 1692e(10), and 1692f, among others.

### *Robert Doe Misleads Finnell During a Phone Call on June 8, 2011*

28.     On or about June 8, 2011, Defendant Robert Doe contacted Finnell by telephone in an effort to collect the debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

29.   After Finnell answered the phone, Defendant Robert Doe stated his name was Robert from the Brachfeld Law Group.

30.   Defendant Robert Doe told Finnell that his law firm was attempting to collect a debt.

31.   At the time of the phone call, Finnell was at a conference in Las Vegas, surrounded by her peers.

32.   Finnell told Defendant Robert Doe "I can't talk about this right now" or words to that effect.

33.   Defendant Robert Doe ignored Finnell and said "you need to do something about this within the next twenty-four hours or something will happen with your job" or words to that effect.

34.   Again, Finnell told Defendant Robert Doe that she "could not talk about this right now" or words to that effect.

35.   Defendant Robert Doe dismissed Finnell's statement and tried to make payment arrangements.

36.   Finnell again told Defendant Robert Doe "I can't talk about this right now" or words to that effect.

37.   Finnell felt like she could not even say a sentence without getting cut off.

38.  Finnell then told Defendant Robert Doe that she was looking into bankruptcy with an attorney, or words to that effect.

39.  Defendant Robert Doe asked Finnell "have you paid your attorney?" or words to that effect.

40.  Finnell told Defendant Robert Doe that she had not yet paid her bankruptcy attorney.

41.  Defendant Robert Doe told Finnell "if you haven't paid him, then you don't really have an attorney" or words to that effect.

42.  Finnell was rattled and frustrated, as she had signed a retainer with a Brad Perri, a bankruptcy attorney, on April 19, 2010.

43.  Defendant Robert Doe then told Finnell that "if you have not filed bankruptcy, the action we are taking will not be included in the bankruptcy anyway" or words to that effect.

44.  The above statements by Defendant Robert Doe's concerning Finnell's bankruptcy representation and potential bankruptcy filing constituted legal advice and the unauthorized practice of law.

45.  Defendant Robert Doe then threatened to sue Finnell and informed her she only had a twenty-four hour window to make payment arrangements.

46.  Bewildered, shocked, and unable to continue the conversation because she was among her peers in a public setting, Finnell then told Defendant Robert Doe that she would call him tomorrow or words to that effect.

47.  Thereafter, the call ended.

48.  After the conversation ended, Finnell was upset, scared, and she became very withdrawn from her interactions with her peers at the conference.

49.  This call to Finnell was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(3), 1692 e(5), 1692e(10), and 1692f, among others.

### *Finnell Receives a Text Message from Patty Mendoza Regarding Defendant Robert Doe*

50.  On or about June 8, 2011, Finnell received a text message from her sister, Patty Mendoza.

51.  Finnell received the text message from Patty Mendoza soon after her conversation with Defendant Robert Doe.

52.  The text message said "A man named Robert called from Brockfeld Law Group. His number 866-837-6262. He said call within 24 hrs or they will have to file a lawsuit and can effect your job. When you call it is a long

message so as soon as the message comes on press #1 then extension 4559. Your file # is 10381541. He is willing to work with you just call him," or words to that effect.

53. Finnell was shocked and mortified that Defendant Robert Doe had informed her sister, Patty Mendoza, that Defendant Brachfeld was considering suing her.

54. Finnell wondered what else Defendant Robert Doe had told Patty Mendoza.

55. Finnell was embarrassed that Defendant Robert Doe had contacted Patty Mendoza and scared that he would call Patty Mendoza again and reveal additional private details about her life.

### Finnell Calls Defendant Robert Doe on June 9, 2011

56. On or about June 9, 2011, Finnell contacted Defendant Robert Doe at Brachfeld by telephone, which became a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

57. Finnell called Defendant Robert Doe because she was concerned he would continue to call her mother and Patty Mendoza and reveal private details about her life.

58.   Upon being connected with Defendant Robert Doe, Finnell provided the case number Defendant Robert Doe had previously given her.

59.   Finnell told Defendant Robert Doe she had an attorney.

60.   Defendant Robert Doe said "that's the information I need" or words to that effect.

61.   Because the information was only accessible on her cell phone, and Finnell was currently using her cell phone, Finnell told Defendant Robert Doe she would call him back with the name and number of her attorney.

62.   Thereafter, the call ended.

63.   Sometime later on June 9, 2011, Finnell attempted to contact Defendant Robert Doe by telephone.

64.   Defendant Robert Doe did not answer his phone, so Finnell left a message on his voicemail.

65.   In her message, Finnell provided the name of Brad Perri, a bankruptcy attorney. Finnell then provided Perri's business phone number, (612) 940-1260.

66.   Thereafter, the call ended.

### *Finnell Receives a Collection Letter from Defendant Brachfeld*

67.   On or about June 17, 2011, Finnell received a collection letter from Defendant Brachfeld.

68.   The collection letter from Defendant Brachfeld is dated June 13, 2011.

69.   Finnell informed Defendants on June 9, 2011 that she had retained Brad Perri as her attorney and provide Perri's contact information.

70.   Despite informing Defendants she had retained Attorney Perri, Defendants continued to contact Finnell.

71.   Among other things, the collection letter states " . . .we are operating only as a debt collector and not in any legal capacity at this time. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. Attorneys in this firm are only licensed in California and we do not sue in any other state . . ." or words to that effect.

72.   Among other misleading statements, Finnell's sister, Patty Mendoza, had previously been told that Defendant Brachfeld was going to sue Finnell.

73.   Among other misleading statements, Finnell had been threatened by Defendant Robert Doe with a lawsuit.

74. This letter was a collection communication in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692c(a)(2), 1692d, 1692e, 1692e(10), and 1692f, among others.

## *Unauthorized Practice of Law*

75. Minn. Stat. § 481.02 states in pertinent part:

> **481.02 UNAUTHORIZED PRACTICE OF LAW.**
>
> Subdivision 1. Prohibitions. **It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law**, to appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity, or, **by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel**, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services, or, for or without a fee or any consideration, to prepare, directly or through another, for another person, firm, or corporation, any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or, for a fee or any consideration, to prepare for another person, firm, or corporation, any other legal document, except as provided in subdivision 3.

76. Defendant Robert Doe's statement that Finnell had not actually retained her bankruptcy attorney because she had not paid him constituted legal advice.

77. Defendant Robert Doe's statement that the action Brachfeld would be taking would not be included in the bankruptcy constituted legal advice.

78. Defendant Robert Doe, as an agent of Defendant Brachfeld, statement to Patty Mendoza that they were going to sue Finnell and affect Finnell's job constituted the unauthorized practice of law.

79. Upon information and belief, Defendant Robert Doe is not licensed to practice law in Minnesota.

80. Defendant Robert Doe has therefore engaged in the unauthorized practice of law with respect to Plaintiff in violation of Minn. Stat. § 481.02, Subd. 1 and is therefore liable for Plaintiff's actual damages, attorney's fees, and costs.

81. It was false and deceptive by Defendant Robert Doe to state, suggest or imply that he was in fact authorized to practice law within this State when he was not.

82. Defendant Brachfeld's letter to Finnell using the impramatur "The Brachfeld Law Group, PC" purports to hold out by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel.

83. Upon information and belief, neither The Brachfeld Law Group, PC, nor any of its attorneys are licensed to practice law in the state of Minnesota.

84.   Upon information and belief, The Brachfeld Law Group, PC, is not registered with the Minnesota Lawyers Professional Responsibility Board as a legal services corporation.

85.   It was false and deceptive by Defendant Brachfeld to state, suggest or imply that it was in fact authorized to practice law within this State when it was not.

86.   Defendant Brachfeld has therefore engaged in the unauthorized practice of law with respect to Finnell in violation of Minn. Stat. § 481.02, Subd. 1, and is therefore liable for Plaintiff's actual damages, attorney fees, and costs.

87.   Defendants' unauthorized practice of law in Minnesota was also a false and deceptive practice in violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692d, 1692e, and 1692f, among others.

*Summary*

88.   All of the above-described collection communications made to Plaintiff by these individual Defendants and other collection employees employed by Defendant Brachfeld, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

89.  The above-detailed conduct by these Defendants of harassing Plaintiff in an effort to collect this alleged debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions of the FDCPA.

90.  Plaintiff has suffered actual damages as a result of Defendants' illegal conduct in the form of anger, anxiety, emotional distress, fear, frustration, humiliation, anxiety, embarrassment, amongst other negative emotions.

91.  Defendants' illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of Plaintiff.

**Respondeat Superior Liability**

92.  The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant Brachfeld who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Brachfeld.

93.  The acts and omissions by these individual Defendants and these other debt collectors were incidental to, or of the same general nature as, the

responsibilities these agents were authorized to perform by Defendant Brachfeld in collecting consumer debts.

94.     By committing these acts and omissions against Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principal, Defendant Brachfeld.

95.     Defendant Brachfeld is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this debt from Plaintiff.

### Trial by Jury

96.     Plaintiff is entitled to and hereby respectfully demand a trial by jury. US Const. Amend. 7; Fed. R. Civ. P. 38.

### <u>Causes of Action</u>

### Count 1:
### Violations of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 et seq.

97.     Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

98.     The foregoing intentional and negligent acts and omissions of Defendants

        constitute numerous and multiple violations of the FDCPA including, but

        not limited to, each and every one of the above-cited provisions of the

        FDCPA, 15 U.S.C. §§ 1692–1692p.

99.     As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to

        actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in

        an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and,

        reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from

        each and every Defendant.

**Count 2:**
**Unauthorized Practice of Law Pursuant to Minn. Stat. § 481.02**

100.    Plaintiff incorporates by reference all of the above paragraphs of this

        Complaint as though fully stated herein.

101.    Defendants foregoing acts as described herein in attempting to collect this

        alleged debt by offering legal advice to Plaintiff constitutes the

        Unauthorized Practice of Law.

102.    Plaintiff is therefore entitled to declaratory relief pursuant to Minn. Stat. §

        481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, declaring Defendants'

actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02.

103.    Plaintiff is therefore entitled to injunctive relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, enjoining Defendants from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02.

104.    Plaintiff is therefore entitled to Plaintiff's attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a.

**Count 3:**
**Invasion of Privacy by Intrusion Upon Seclusion**

105.    Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

106.    Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

107.    Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

108.    Defendants also intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by unlawfully telling Finnell's sister, Patty Mendoza, that Brachfeld was going to sue Finnell.

109.    Defendants and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's rights to privacy.

110.    Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs.

111.    The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which

occurred in a way that would be highly offensive to a reasonable person in that position.

112.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## Prayer for Relief

**Wherefore**, Plaintiff prays that judgment be entered against each Defendant for:

## Count 1:
## Violations of the Fair Debt Collection Practices Act
## 15 U.S.C. §§ 1692 et seq.

- statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be determined at trial;

- costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

## Count 2:
## Unauthorized Practice of Law Pursuant to Minn. Stat. § 481.02

- for a declaration that Defendants actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- for an order enjoining Defendants from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- Awarding Plaintiff attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a;

### Count 3:
### Invasion of Privacy by Intrusion Upon Seclusion

- For an award of actual damages from each Defendant for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**The Ryder Law Firm, LLC**

Date: <u>September 9, 2011</u>            <u>*s/Randall P. Ryder*</u>
Randall P. Ryder (#389957)
2701 University Ave SE, #209
Minneapolis, MN 55414

phone • 612.424.3770
fax • 612.605.3247
e-mail • email@theryderlawfirm.com

**Attorney for Plaintiff**